UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CATHLEEN MALGIERI,

            Plaintiff,

      -against-                           OPINION AND ORDER

DONNA EHRENBERG, individually        12-CV-2517 (CS)
and in her role as a member of the
CLARKSTOWN CENTRAL SCHOOL
DISTRICT BOARD OF EDUCATION,

            Defendant.
-------------------------------------------------------x

Appearances:

Stephen L. Barry, Esq.
Law Office of Stephen L. Barry
White Plains, New York
*Counsel for Plaintiff*

Brian S. Sokoloff
David A. Gold
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 6.) For the reasons stated below, the Motion is GRANTED.

I.      Background

      For purposes of the motion, the facts (although not the conclusions) set forth in the First Amended Complaint ("FAC"), (Doc. 4), are assumed to be true. In light of my disposition below, I set forth only the facts relevant to Plaintiff's sole federal claim, for retaliation for the exercise of her First Amendment rights.

Plaintiff is a special education teacher employed by the Clarkstown Central School District (the "School District"), a member of the Clarkstown Teachers Association ("CTA"), and chair of the CTA's special education committee. (FAC ¶¶ 6, 7, 23, 25.) Until the 2010-2011 school year, Plaintiff had never been reprimanded or the subject of a disciplinary report, and had received positive employment reviews. (*Id.* ¶¶ 12, 13, 66, 67.) Defendant is an elected member of the School District's School Board. (*Id.* ¶ 8.)

In September 2009, Defendant stated publicly that District parents should not trust teachers to follow students' Individual Education Plans ("IEPs"), (*id.* ¶ 29), which are drawn up for each special education student, *see* 20 U.S.C. § 1414(d). That same month, at a meeting of the Special Education Parent Teacher Assocation ("SEPTA"), Plaintiff publicly disagreed with Defendant, stating that special education teachers were following the IEPs and that parents could trust the teachers to care for their children. (FAC ¶ 30.) Defendant thereafter allegedly contacted either the School Board President to demand that he pressure the Superintendent to reprimand Plaintiff for her statement, (*id.* ¶ 159), or contacted an unnamed school administrator with the same request, (*id.* ¶ 150). In October 2009, Administrator Jeff Sobel "spoke[] to" Plaintiff about her statement, (*id.* ¶ 31), but the FAC does not say what he said.

In May 2010, Plaintiff spoke at a School Board "Meet the Candidates Night," (*id.* ¶ 32), but the FAC does not say what she said. School Board president Katz, not a party to this litigation, asked the Superintendent to reprimand Plaintiff for her remarks, but no action was taken as a result of this request. (*Id.*) At a public School Board meeting during the summer of 2010, a non-party School Board member told Plaintiff to "shut up." (*Id.* ¶ 33.)

On January 24, 2011, Defendant made false allegations to Plaintiff's principal to the effect that other teachers were afraid of Plaintiff, and asked the principal how she "handles"

Plaintiff. (*Id.* ¶¶ 77-84). Under School District policy, individual School Board members are supposed to bring concerns about staff only to the Superintendent, not to other administrators. (*Id.* ¶¶ 70-71, 85.) After Defendant spoke to Plaintiff's principal, the principal raised complaints about Plaintiff to other, unnamed administrators, (*id.* ¶¶ 88-90), after which the principal was awarded tenure, (*id.* ¶ 93). In May 2011, Plaintiff complained to the Superintendent and the School District compliance officer about Defendant pressuring the principal, and the School District investigated the complaint. (*Id.* ¶¶ 123-27.)

In June 2011, Plaintiff received – presumably from the principal – a performance review that reflected badly on her. (*Id.* ¶¶ 128-29.) On July 22, 2011, the principal told Plaintiff that she would be teaching a different grade level, which would mean learning a new curriculum and not finishing a certification program in which she was involved, (*id.* ¶¶ 103-06); that she would no longer work with the teaching assistant who had been with her for ten years, (*id.* ¶ 107); and that she would no longer be involved in the "Read 180" program, (*id.* ¶ 108).

On September 8, 2011, Defendant made inaccurate and misleading statements at a School Board meeting regarding the School District's special education program. (*Id.* ¶¶ 34-37.) Plaintiff approached Defendant after the meeting but Defendant would not speak to Plaintiff. (*Id.* ¶¶ 38-39.) Defendant thereafter falsely told community members and the police that Plaintiff was threatening or harassing Defendant. (*Id.* ¶¶ 41-48.) The police took no action regarding Defendant's complaint. (*Id.* ¶¶ 44, 49.)

II. Applicable Legal Standards

    A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B.   First Amendment Retaliation under Section 1983

Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

4

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. To state a claim for relief in an action pursuant to Section 1983, a plaintiff must establish (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

In order to establish a First Amendment retaliation claim as a public employee, Plaintiff must show that: (1) the speech addressed a matter that is protected – *i.e.*, a matter of public concern; (2) Plaintiff suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action. *Arteta v. Cnty. of Orange*, 141 F. App'x 3, 5 (2d Cir. 2005).[1] With respect to the first element, "[p]ublic employee speech is protected from employer retaliation under the First Amendment only where 'the employee spoke as a citizen on a matter of public concern.'" *Storman v. Klein*, 395 F. App'x 790, 793 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). With respect to the second element, adverse employment action includes "harsh measures, such as discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand, as well as some lesser sanctions, such as failure to process a teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities, and express accusations of lying." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31

---

[1] Even if these elements are met, "defendants may still escape liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 503 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). "The latter is known as the "Pickering balancing test" and is a question of law for the Court. Even if the government prevails on the *Pickering* test, plaintiff may still succeed by showing that the adverse action was in fact motivated by retaliation and not by any fear of a resultant disruption." *Id.* (same).

(2d Cir. 2012). Only retaliatory conduct sufficient to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" constitutes adverse action. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted). "As for the third element, causal connection, 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Arteta*, 141 F. App'x at 5 (quoting *David v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). In other words, "the adverse employment action would not have been taken absent the employee's protected speech." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012). The causal connection can be established either indirectly by means of circumstantial evidence—for example, by showing that the protected activity was closely followed by adverse action—or directly by evidence of retaliatory animus. *Id.*; *Roper v. Hynes*, No. 05-CV-7664, 2006 WL 2773032, at *8 (S.D.N.Y. Sept. 27, 2006).

Although "[t]here is no bright line for how close in time the adverse employment action must follow the protected activity in order to sustain the causation element. . . . [, t]here is . . . substantial authority holding that a period between five and six months is sufficient." *Anderson v. New York*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009) (footnotes omitted). Although "the absence of close temporal proximity of the protected activity to the adverse action is not necessarily fatal, because evidence of an ongoing pattern of retaliatory conduct and intent can establish a causal connection," a plaintiff seeking to establish First Amendment retaliation must still establish that the protected speech played a substantial part in the adverse action. *See Shub v. Westchester Cmty. Coll.*, 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008) (despite allegations of ongoing pattern of retaliation spanning many years, lack of direct evidence showing that adverse action occurred *because of* protected activity precluded finding causation); *Morey v. Somers*

*Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *12 (S.D.N.Y. Mar. 21, 2007) ("With more than a year between the protected speech and the adverse employment action, plaintiff must allege more than conclusory assertions in order to establish a causal connection.").

III.   Analysis

In the third cause of action, Plaintiff claims Defendant retaliated against her for her exercise of First Amendment rights. The retaliation allegedly took the form of: 1) Defendant requesting that Plaintiff be reprimanded for her remarks at the September 2009 SEPTA meeting (which occurred at an unknown time but presumably shortly after the meeting), (*see* FAC ¶ 150); 2) Defendant pressuring Plaintiff's principal in January 2011 to "handle" Plaintiff, (*see* FAC ¶ 151)[2]; and 3) Defendant making a false police report in September 2011, (*see* FAC ¶ 152). The FAC does not make clear what protected speech Plaintiff alleges as having prompted the retaliation, but her memorandum of law states that that speech consists of her statements at: 1) the September 2009 SEPTA meeting; 2) the May 2010 "Meet the Candidates Night"; and 3) the summer 2010 open School Board meeting. (P's Br. at 18-19.)[3]  I will address each in turn.

A.   September 2009 SEPTA Meeting

Plaintiff's speech at this meeting addressed the quality of public education, which is a matter of public concern. *See Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996). The FAC does not plausibly allege, however, that Plaintiff spoke as a private citizen, rather than in her capacity as a public employee. In *Garcetti*, the Supreme Court explained that "[r]estricting speech that

---

[2] Plaintiff's statement in paragraph 151 of the FAC – that Defendant pressured the principal "to 'handle' [Plaintiff]" – seems to be a rather misleading characterization, given that Plaintiff states elsewhere in the FAC that during Defendant's conversation with the principal, Defendant *asked* the principal "*how she 'handles' [Plaintiff]*." (FAC ¶ 84 (emphasis added)).

[3] "P's Br." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, (Doc. 5).

7

owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." 547 U.S. at 421–22. *Garcetti*, however, did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424.

> Since *Garcetti*, some lower courts have developed more guidelines for determining whether speech is made pursuant to a public employee's official duties. Although none of the following factors are dispositive, they may be considered by the Court: the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment. As indicated by *Garcetti*, two relevant factors that, considered in isolation, are not dispositive are whether the speech occurs in the workplace and whether the speech concerns the subject matter of the employee's job. Again, in general, although there is no simple checklist or formula by which to determine whether the employee was speaking as a private citizen or as a public employee . . . the cases distinguish between speech that is the kind of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job.

*Frisenda*, 775 F. Supp. 2d at 506 (internal quotation marks, alterations and citations omitted).

> The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brightline rule. Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision.

*Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (internal citations omitted).

Here Plaintiff did not plausibly speak at the SEPTA meeting as a private citizen, but rather spoke in her capacity as a special education teacher. While she spoke at a public forum at which private citizens could presumably speak, and her remarks were not within the School District chain of command, they were directed toward her professional constituents (the parents

8

of special education students); the knowledge underlying her comments could only have come from the performance of her professional duties; and the speech plainly concerned the subject matter of Plaintiff's job. A parent or other private citizen would not be in a position to provide professional or inside insight on how special education teachers were doing their jobs. *See Sacha v. Sedita*, No. 09-CV-1119S, 2012 WL 5207528, at *6-7 (N.D.N.Y. Oct. 22, 2012) (speaker spoke in professional capacity and subject matter of speech related substantially to speaker's employment and constituted a professional determination, so fact that speaker made views public did not alter fact that speaker spoke as public employee).

Nevertheless, because it is arguable whether Plaintiff had a job duty to share her views with parents regarding their children's education, *see Ross*, 693 F.3d at 307 ("Courts must focus their inquiry on the nature of the speech itself and its relationship to the plaintiff's job responsibilities), I will assume for the sake of argument that Plaintiff's speech was protected, and will address whether it resulted in an adverse employment action.

"In the context of a First Amendment retaliation claim, [the Second Circuit has] held that 'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d. Cir. 2004) (alteration and internal quotation marks omitted); *see Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir.2006). "In this context, '[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'" *Zelnik*, 464 F.3d at 226 (quoting *Morris*, 196 F.3d at 110). This list of retaliatory conduct is not exhaustive, however, and "'lesser actions may also be considered adverse employment actions.'" *Id.* (same). "Adverse employment actions may include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class

9

preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Morris*, 196 F.3d at 110.

The FAC does not plausibly allege that Plaintiff suffered any adverse employment action as a result of her comments at the SEPTA meeting. It alleges only that she was "spoken to." (FAC ¶ 31.) No facts regarding what was said are provided. For all one can tell from the FAC, the administrator who spoke to Plaintiff engaged in a professional conversation about the substance of Plaintiff's disagreement with Defendant. There are no facts from which it could be inferred that the administrator in fact delivered the reprimand allegedly requested by Defendant or that any sort of discipline was imposed. Plaintiff argues in her brief that the conversation was "non-formal discipline," (P's Br. at 18), or "informal oral discipline," (*id.* at 20), but not only does the FAC not plead facts plausibly supporting that characterization, but it in fact says otherwise – specifically, that before the 2010-2011 academic year, Plaintiff "had never received any reprimands or disciplinary complaints," (FAC ¶ 12). Finally, even if the administrator had expressed verbal disapproval of Plaintiff's conduct, such a conversation – which carries no whiff of formal discipline – is not an adverse employment action. *Cf. Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 382 n.6 (W.D.N.Y. 2012) (letters of reprimand and the like can constitute adverse action, especially when made part of employee's permanent file); *Morrison v. Johnson*, No. 01-CV-636, 2006 WL 2811802, at *16 (N.D.N.Y. Sept. 28, 2006) (counseling memoranda standing alone would not constitute adverse action); *Aquavia v. Goggin*, 208 F. Supp. 2d 225, 233-34 (D. Conn. 2002) (formal reprimands can constitute adverse action; formal warning memorialized in writing and "treated . . . seriously" enough that union grieved it was sufficient).

Assuming for the sake of argument that the events in 2011 could constitute adverse

10

action, *see* note 5 below, those events are far too removed from Plaintiff's speech in 2009 to raise an inference that they were causally connected to that speech. *See, e.g., Barker v. UBS AG*, No. 09-CV-2084, 2012 WL 2361211, at *8 (D. Conn. May 22, 2012); *Dibiase v. Barber*, No. 06-CV-5355, 2008 WL 4455601, at *17 (E.D.N.Y. Sept. 30, 2008). Nor does the FAC plausibly suggest any ongoing pattern of adverse actions that might link the 2009 speech to the 2011 actions. The case on which Plaintiff relies in arguing to the contrary, *Shanks v. Vill. of Catskill Bd. of Trs.*, 653 F. Supp. 2d 158 (N.D.N.Y. 2009), involved "abundant evidence that defendants' harassing and threatening conduct continued unabated throughout [the period between the speech and the termination] and was related to the [speech]." *Id.* at 168. Nothing remotely like the *Shanks* situation is alleged in the FAC.

Accordingly, the FAC does not plausibly allege retaliation for Plaintiff's speech at the September 2009 SEPTA meeting.

B.  May 2010 Meet-the-Candidates Night

Plaintiff also argues that Defendant retaliated against her for her comments at a Meet-the-Candidates Night in May 2010. The FAC does not describe what Plaintiff said on that occasion, and thus it does not plausibly allege either that Plaintiff's statements related to a matter of public concern or were made in her capacity as citizen rather than employee. *See Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009) (summary order) ("Without further allegations regarding the nature and timing of [the] speech . . . Plaintiffs have not sufficiently pleaded a claim of retaliation.") Further, while the FAC describes the displeasure of another School Board member with Plaintiff's remarks, it contains no allegation that Defendant shared that view or did anything following the meeting, or that Plaintiff was subjected to any adverse action as a result. To the extent Plaintiff argues that the events in 2011 related to the May 2010 comments, such an

11

allegation is not plausible, in the circumstances of this case, given the lapse of eight months or more and the absence of any other indication of causal connection.

Accordingly, the FAC does not plausibly allege retaliation for Plaintiff's speech at the May 2010 Meet-the-Candidates Night.

C. Summer 2010 Open Board Meeting

Plaintiff further alleges retaliation for her remarks at an open School Board meeting at some point during the summer of 2010. The FAC does not describe what Plaintiff said on that occasion, and thus it does not plausibly allege either that Plaintiff's statements related to a matter of public concern or were made in her capacity as citizen rather than employee. Further, the consequence allegedly prompted by those comments – being told to "shut up" – hardly constitutes adverse action. *See Wrobel*, 692 F.3d at 31 (*de minimis* slights and insults do not amount to retaliation). Moreover, Defendant is not alleged to have been the one who told Plaintiff to shut up, and there is no allegation that Defendant had any disagreement with whatever it was that Plaintiff said at that meeting.

Finally, while "summer" 2010 might in some circumstances be within sufficient temporal proximity to early 2011 to support an inference of causal connection, it is not sufficient in this case. If Defendant was incensed enough by Plaintiff's remarks in the summer of 2010 to fabricate false accusations that other teachers were afraid of Plaintiff,[4] there is no reason why that could not have been done well before January 2011. *See Washington v. Cnty. of Onondaga,*

---

[4] The FAC alleges that that allegation was untrue, (*see* FAC ¶ 82), but does not state that Defendant had no basis for it, (*see id.* ¶ 79 (Defendant "repeat[ed] . . . or creat[ed] rumors about" Plaintiff)). Because the FAC acknowledges that the concerns raised by Defendant could have been transmitted to Defendant by others – *i.e.*, that the concerns may not have been created but could have been repeated – the suggestion that Defendant fabricated the concerns is possible but not plausible. *See Iqbal*, 556 U.S. at 679.

12

No. 04-CV-997, 2009 WL 3171787, at *15 (N.D.N.Y. Sept. 29, 2009) (if January 2002 complaint prompted discipline, it would have occurred in January or February 2002, not March). To the extent Plaintiff argues that the retaliation took the form of Defendant breaching policy, in that she brought her concerns directly to Plaintiff's principal rather than to the Superintendent, such a breach of an internal protocol is too minor to amount to adverse action. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir.1999) (alleged act of retaliation must be more than *de minimis*) (collecting cases); *see also Zelnik*, 464 F.3d at 226 ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .") (alteration and internal quotation marks omitted).

After Defendant spoke to the principal, the principal is alleged to have raised complaints about Plaintiff and issued a verbal reprimand, but there is no allegation that the subject of the principal's complaints bore any relationship to Defendant's complaints. Further, nothing happened to Plaintiff until she received a poor performance review (presumably from the principal) in June 2011 and had a change in responsibilities in July 2011. Assuming these could constitute adverse action,[5] they occurred too far from the summer 2010 speech to raise, in the circumstances of this case, an inference of a causal connection. This is not a situation, as in *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009), where there was no earlier opportune time

---

[5] I do not regard Plaintiff's change in responsibilities in July 2011 as adverse. While Plaintiff might have preferred the grade level to which she was accustomed and the teaching assistant with whom she was familiar, there are no allegations suggesting that the new assignment or assistant were less desirable, akin to a demotion, or harmful to Plaintiff's professional reputation. *Cf. Bernheim*, 79 F.3d at 324-36 (teacher's allegations of demotion, reduced preparation time, assignment to remote classroom despite plaintiff's known disabilities, and negative evaluations together sufficed to state a claim of actionably adverse action). Even if the reassignments were considered adverse, however, it would not change the outcome on this motion.

for the adverse action. Whether the adverse action is regarded as occurring in January 2011 or June 2011, based on the facts set forth in the FAC there was no impediment to it occurring months earlier if it indeed bore any relationship to the summer 2010 speech.

For the reasons stated above, the FAC does not plausibly allege retaliation for Plaintiff's speech at the summer 2010 open School Board meeting.[6]

Finally, the events described by Plaintiff, even taken together, do not plausibly amount to actionable retaliation. "Retaliatory harassment in the First Amendment context can reach a 'critical mass' of frequency and severity as to constitute an adverse employment action," but "[i]ncidents that are relatively minor and infrequent will not meet the standard." *Murray v. Town of North Hempstead*, 853 F.Supp.2d 247, 265 (E.D.N.Y. 2012) (internal quotation marks omitted). Even if were to assume that all the alleged speech was protected and that Defendant was responsible for all the allegedly adverse actions, apart from the negative performance review in June 2011 the FAC in this case alleges only minor and infrequent incidents that would not suffice to tie that review to Plaintiff's earlier speech.

IV. <u>Leave to Amend</u>

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010). It is within the discretion of the district court to grant or deny leave to amend,

---

[6] Plaintiff wisely does not allege that her May 2011 complaint to the Superintendent and the School District compliance officer (about Defendant speaking directly to Plaintiff's principal) constituted protected speech that resulted in retaliation. That speech is unprotected under the First Amendment because it was plainly a complaint, in Plaintiff's capacity as a public employee, about her conditions of employment, not a statement on a matter of public concern. *See, e.g., Plofsky v. Giuliano*, 375 F. App'x 151, 153 (2d Cir. 2010) (summary order); *Ruotolo v. City of N.Y.*, 514 F.3d 184, 189-90 (2d Cir. 2008); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *10-12 (E.D.N.Y. Sept. 5, 2012).

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," *Ruotolo*, 514 F.3d at 191 (internal quotation marks omitted). Furthermore, a district court has no obligation to grant leave to amend *sua sponte*. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend the complaint] that was not made."); *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where plaintiff had already amended complaint once and amendment would have been futile); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint is substantive and better pleading would not cure it).

At a pre-motion conference held on May 7, 2012, Defendant sought leave to file a motion to dismiss. It had previously submitted a letter outlining the grounds on which it intended to move. (Doc. 2.) At the conference, I told Plaintiff that the First Amendment retaliation claim required further detail as to why the actions were adverse and whether Defendant was aware of the allegedly protected speech, and gave Plaintiff leave to amend her Complaint. In these circumstances, Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*. *See Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his

15

pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, Plaintiff has not requested leave to file a Second Amended Complaint or otherwise suggested that she is in possession of facts that could cure the pleading deficiencies. Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*. *See, e.g., Gallop*, 642 F.3d at 369 (no error in failing to grant leave to amend where it was not sought); *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 n.7 (2d Cir. 1980) ("[A]ppellants never sought leave to amend their complaint either in the district court or as an alternative form of relief in this court after [appellee] raised the issue of the sufficiency of appellants' complaint. Accordingly, we see no reason to grant such leave *sua sponte*.").

V.  State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that the claim over which this Court has original jurisdiction (the third cause of action) should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims (the first and third causes of action).[7] *See id.* (citing 28 U.S.C. § 1367(c)(3)).

## Conclusion

For the reasons stated above, Plaintiff's third cause of action for First Amendment retaliation pursuant to 42 U.S.C. § 1983 is dismissed with prejudice. Plaintiff's second cause of action pursuant to New York Civil Service law Section 75-B is dismissed with prejudice on consent as withdrawn. The remaining claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 6), and close the case.

SO ORDERED.

Dated: December 21, 2012
       White Plains, New York

 

_____
CATHY SEIBEL, U.S.D.J.

---

[7] Plaintiff has withdrawn the second cause of action. (*See* P's Br. at 6-7.)